# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### THIRD DIVISION

United States of America,                           Criminal No. 07-419  DWF/AJB

                 Plaintiff,

v.

(1)     Vong Voraveth,                   **REPORT AND RECOMMENDATION**
(2)     Pradith Syhaphom,
(4)     Minh Tran,
(6)     Xiro Naovalath, and
(7)     Ta Lovan,

                 Defendants.

         Christian S. Wilton, Esq., Assistant United States Attorney, for the plaintiff,
                 United States of America;
         Earl P. Gray, Esq., for defendant Vong Voraveth;
         Gary R. Bryant-Wolf, Esq., for defendant Pradith Syhaphom;
         Paul C. Engh, Esq., for defendant Minh Tran;
         Kassius O Benson, Esq., for defendant Xiro Naovalath; and
         Peter B. Wold, Esq., for defendant Ta Lovan.

         This action came on for hearing before the Court, Magistrate Judge Arthur J.

Boylan, on April 14, 2008, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis  55415.

The court issued an Order on Motions dated July 1, 2008, reserving defendants' various motions

to suppress wiretap evidence, search and seizure evidence and statements for submission to the

district court on report and recommendation.

         Based upon the file and documents contained therein, along with witness

testimony, exhibits, and the memorandums and arguments of counsel, the magistrate judge

makes the following:

**FINDINGS**

**October 11, 2007, Search Warrants and Vehicle Search**

**Search Warrants (Exh. #1 and Exh. #2).**  On October 11, 2007, Dakota County District Court Judge Shawn M. Moynihan issued a warrant to search a particularly described residential address in Burnsville, Minnesota, including all garages and storage spaces, as well as the person of Pradith Syhaphom (Hearing Exh. No. 1).  The location is further identified in the supporting affidavit as the residence of defendant Syhaphom.  Meanwhile, a second search warrant was issued on October 11, 2007, by Hennepin County District Court Judge John Q. McShane, therein authorizing the search of a particularly described residential address in Richfield, Minnesota, and the person of defendant Syhaphom (Hearing Exh. No. 2).  The Richfield location is identified in the supporting affidavit as the residence of defendant Syhaphom's parents.  Each of the search warrants identified the objects of the warrant as controlled substances, including Ecstasy; specified packaging equipment and supplies; documents, cell phones, and computer equipment, including hard drives, peripherals, and storage media, showing drug distribution activities and information relating to drug sources and customers; money; identification and constructive possession documents; and firearms.  The Dakota County warrant was issued on the basis of probable cause statements contained in the Affidavit of Hennepin County Sheriff's Deputy Christofer Nybeck, and the Hennepin County warrant was issued on the basis of probable cause statements contained in the Affidavit of Edina Police Department Detective Richard Campbell.  The warrant affidavits of Deputy Nybeck and Detective Campbell are identical with respect to the factual basis to support the assertion of probable cause.  The submitted facts include information obtained by physical surveillance, confidential informant reports, records analysis, and interception of wire communications.  The

warrants were executed on the same day they were issued, October 11, 2007, and evidence was seized pursuant to each of the warrants.

**Vehicle Search.**  Deputy Nybeck arrived at the Burnsville residence after officers had already commenced searching the home on October 11, 2007.  In the course of the search, officers recovered a 9 millimeter handgun from the defendant's bedroom.[1]  After viewing the firearm, Deputy Nybeck went to the attached garage to begin searching that area.  When Nybeck opened the overhead door to get better lighting he found defendant Syhaphom standing in the driveway, in handcuffs, and speaking with Burnsville Police Officer Dougan.   Nybeck learned that the Burnsville officer had seen Syhaphom drive up to the garage in a black Infinity QX 4 which was now parked at an angle, partly in the driveway and partly on the street.  Deputy Nybeck recognized Mr. Syhaphom from previous surveillance, and the defendant was now placed under arrest.  The arrest was based upon the deputy's observation of a drug transaction on the previous night, October 10, 2007, in which Syhaphom appeared to have delivered 1,000 Ecstasy pills to a cooperating individual.[2]  Following the drug transfer the defendant was followed to a place within two blocks of the Burnsville residence, at which time officers stopped surveillance to avoid detection.[3]

---

[1]  It was later determined that Syhaphom had a permit to carry a handgun.

[2]  The warrant affidavit states that the CRI was searched for weapons and narcotics prior to the arranged buy, and the CRI possessed no contraband at that time.  The transaction occurred at a well-lit Holiday gas station.

[3]  The warrant application states that officers had observed Syhaphom in a silver Infinity SUV, MN license #NUY-702, leaving the Richfield location prior to the drug transaction on October 10, 2007.  Though officers lost visual contact with the silver Infinity, the vehicle and defendant were observed arriving at the prearranged transaction location a short time later.  This was not the same vehicle that was partially parked in the driveway the following day.

Immediately after Mr. Syhaphom's arrest on the driveway at the Burnsville search location, officers commenced a search of the black Infinity QX 4.  Suspected Ecstasy pills were found on the rear passenger seat on the right side of the vehicle.  The drugs were contained in three separate Ziploc bags, all of which were inside a nylon case.

**Financial Account Warrants**

**October 12, 2007, Warrants (Exh. #3 and Exh. #4).**  On October 12, 2007, Hennepin County District Court Judge Francis J. Connolly issued separate warrants to search a particularly described and numbered Wells Fargo bank account and safe deposit box (Hearing Exh. No. 3), and a particularly described and numbered credit union account and safe deposit box (Hearing Exh. No. 4).  Both warrants further authorized the seizure of other financial materials relating to Pradith Syhaphom.  The warrants were issued on the basis of probable cause statements contained in the identical Affidavits of Minnetonka Police Department Detective Tim Olsen.  The submitted facts include information obtained by execution of search warrants.  The warrants were executed on the day they were issued, October 12, 2007, and evidence was seized.

**October 15, 2007, Warrant.**  On October 15, 2007, Ramsey County District Court Judge Rosanne Nathanson issued a warrant to search a particularly described and numbered federal credit union bank account and safe deposit box (Hearing Exh. No. 5).  The warrant further authorized the seizure of other financial materials relating to Pradith Syhaphom.  The warrant was issued on the basis of probable cause statements contained in the Affidavit of Hennepin County Sheriff's Deputy Allan McHugh.  The submitted facts include information obtained by execution of residence search warrants.  The warrant was executed on the same day it was issued, October 15, 2007.

4

**December 18, 2007, Search Warrants**

   **Federal Search Warrants (Exh. #7, Exh. #8, and Exh. #9).**  On December 18, 2007, United States Magistrate Judge Janie S. Mayeron issued separate warrants authorizing the searches of a particularly described residence and garage in Eagan, Minnesota  (Hearing Exh. No. 7), identified in the warrant application as the residence of defendant Minh Tran; a particularly described residence and garage in Minnetonka, Minnesota (Hearing Exh. No. 8), identified in the warrant application as the residence of defendant Vong Voraveth; and a particularly described residence and garage in Savage, Minnesota (Hearing Exh. No. 9), identified in the warrant application as the residence of defendant Ta Lovan.  Each of the search warrants identified the objects of the warrant as controlled substances; receipts and records relating to the sale of drugs and disposition of proceeds; records relating to transportation and distribution of drugs; address and telephone books; bank statements and records; travel documents; safe deposit box keys and agreements; money and valuables; photographs; drug packaging equipment and supplies; firearms; computers and electronic communications devices; and items showing constructive possession of evidence.  The warrants were issued on the basis of probable cause statements contained in the Affidavit of FBI Special Agent Daniel T. Otterson (Hearing Exh. No. 10).  The submitted facts include information obtained by multiple controlled drug purchases, interception of wire communications, physical surveillance, search warrant executions, and vehicle search.  The Minnetonka and Savage warrants were executed on December 21, 2007, and the Eagan warrant was executed on December 22, 2007.  Items were seized pursuant to each of the warrants, including a white Lexus SUV that was seized in the course of searching the residence of defendant Minh Tran.

**Computer Search Warrant**

On March 31, 2008, United States Magistrate Judge Janie S. Mayeron issued a warrant authorizing the search of three computers particularly described as a Dell Inspiron 600 laptop computer, a Hewlett Packard laptop computer, and an IPAQ Compaq pocket PC (Hearing Exh. No. 6). Each device was further identified by serial number and all were referenced in the supporting affidavit as having been seized in the execution of a warrant to search the Burnsville residence of defendant Pradith Syhaphom. The Burnsville residence warrant expressly authorized the seizure of computer equipment, including hard drives, peripherals, and storage media. The March 31, 2008, warrant expressly authorized the seizure of information contained within the computer, including receipts and documents relating to the drug sales and the distribution of sale proceeds, books and records relating to the transportation and distribution of drugs, addresses and telephone numbers, banking and financial documents, travel documents, photographs, and information indicating constructive possession. The search warrant further instructed agents to file timely status reports regarding their analysis of seized equipment and data, and also provided explicit instructions regarding search methodology, return of computer materials, hard drive retention, protection of attorney–client privilege, and dispute resolution. The warrant was issued on the basis of probable cause statements contained in the Affidavit of FBI Special Agent Andrew J. Mento, Jr. The submitted facts include information obtained by controlled drug purchase, interception of wire communications, physical surveillance, search warrant execution, and vehicle search.

**Naovalath Statements**

Defendant Xiro Naovalath was arrested by St. Paul Police Officer Vixayvong on

October 5, 2007.  Officer Vixayvong was accompanied by FBI Special Agent Mento.  The defendant was arrested in the alley behind his residence on Lyndale Avenue, and he was thereafter transported to the St. Paul Police Department, where an interview was conducted.  The Miranda advisory was read to Mr. Naovalath from a pre-printed FBI advice of rights form, which the defendant signed as acknowledgment of his understanding of his rights.  He was not under the influence of alcohol or drugs.  In addition to the defendant, the interview was attended by St. Paul Police Sgt. Straka, FBI Special Agent Minh Pham, and Special Agent Mento.  The interview lasted approximately one hour and was conducted in English.  The agents were armed, but their weapons were not displayed.  During the interview the defendant did not request the assistance of an attorney and he did not ask that the interview be stopped.  Mr. Naovalath was well able to converse in English.  He fully understood questions put to him and was able to provide appropriate responses.  At one point near the end of the interview Sgt. Straka became somewhat "heated" or confrontive, but there was no physical contact.  The interview participants remained seated and the defendant was provided a beverage.  Discussions ended when agents concluded that Mr. Naovalath was not being wholly truthful.

**Minh Tran Vehicle Seizure.**  On September 27, 2007, surveillance officers observed a meeting between Minh Tran, Vong Voraveth, and Soukseum Inthickack at the Jasmine Restaurant in south Minneapolis.  Upon leaving the restaurant Mr. Tran returned to his vehicle, a white Lexus SUV, license number LMP 868.  Thereafter, an officer observed Mr. Voraveth walk across the street to Tran's vehicle and then go into the Jasmine Restaurant with a large brown paper bag that the officer had not previously noticed, though no actual hand-off of

the brown bag was observed.[4]  A federal search warrant was executed at Minh Tran's residence

on December 22, 2007, and the white Lexus was seized by officers at that time (Hearing Exh.

No. 7).  The search warrant did not expressly authorize the search or seizure of that particular

vehicle or vehicles in general, and the record contains no indication that drugs or contraband

were found or observed in the vehicle during execution of the search warrant.  The white Lexus

SUV is jointly owned by Mr. Tran and his wife.

**Wiretap Applications, Authorizations, and Procedures Pursuant to 18 U.S.C. § 2518**

On September 25, 2007, an Assistant United States Attorney for the District of

Minnesota submitted an application for an order authorizing the interception of wire

communications to United States District Court Chief Judge James M. Rosenbaum.  The wiretap

authorization was sought pursuant to 18 U.S.C. § 2518 and was requested as part of an FBI

investigation into suspected drug possession and distribution activities and money laundering by

specifically named individuals, including persons who are now defendants in this action.

Defendants were believed to be involved in the distribution of drugs in the District of Minnesota

and elsewhere in the United States.  The wiretap application contains a recitation of the statutory

justifications for the warrants; a description of the application procedures which have been

---

[4]  By way of post-indictment proffer, co-defendant Soukseum Inthickack told officers
that Minh Tran brought a brown bag containing 5,000 Ecstasy pills into the Jasmine Restaurant.
The bag was going to be transferred in the restaurant bathroom, but the bathroom was locked, so
Tran took the bag back to his vehicle.  Vong Voraveth then went to Tran's Lexus and obtained
the brown bag containing the pills.  Officers did not observe Minh Tran carrying the brown bag.
The bag and its contents were later seized pursuant to a stop of Mr. Inthickack's vehicle and a
consent search of that vehicle. Inthickack's statement is put forth as evidence of the nexus
between the Lexus and the drugs. (Hearing Tr., pp. 65-73).  The government asserts that it has
given notice that the vehicle is subject to administrative forfeiture and that Tran's wife has filed
a claim contesting forfeiture, though Mr. Tran has not.

followed pursuant to the requirements of 18 U.S.C. § 2516; and a request for permission to conduct telephone surveillance consistent with provisions of 18 U.S.C. § 2518.  The application further identifies particular individuals who are targets of the proposed surveillance and generally asserts the existence of probable cause as stated with particularity in an attached affidavit of FBI Special Agent Andrew Mento (Hearing Exh. No. 12).

The September 25, 2007, application (Hearing Exh. No. 11) requested authorization to intercept calls to and from telephone number (612) 325-5761, assigned to an AT&T cellular telephone and further identified by Electronic Serial Number (ESN) 011300001129387 and International Mobile Subscriber Identification (IMEI) # 310410147709694.   Service to the target telephone was provided pursuant to subscription from Athit Syaphom, a person further identified by birth date and a Richfield, Minnesota, address. The application asserted that the target telephone was being used and would continue to be used by Vong Voraveth, a/k/a "Conehead," in connection with the suspected offenses.  Authorization was granted by Chief Judge Rosenbaum pursuant to Order dated September 25, 2007  (Hearing Exh. No. 14).  Call monitoring commenced on the day of authorization and continued for a period of 30 days.  The wiretap was terminated on October 24, 2007, and the recordings of intercepted communications were sealed pursuant to Sealing Order issued by Chief Judge Rosenbaum on October 25, 2007  (Hearing Exh. No. 15).

**Attainment.**  The intercept application was authorized by a specifically designated Deputy Assistant Attorney General in the Criminal Division of the United States Department of Justice (Hearing Exh. No. 11, attachment).  The interception application requested wiretap permission only until attainment of the authorized objectives and in no event

more than thirty days beyond time of commencement.  The target phone was not monitored

beyond the time limitation as prescribed by the initial Order Authorizing the Interception of Wire

Communications.  The application broadly described attainment objectives as the interception of

communications which fully reveal the manner in which the named violators and others

unknown participate in the specified offenses and reveal the identities of the co-conspirators,

places of operation, and the nature of the conspiracy.  While the government was able to

accumulate sufficient wiretap and non-wiretap evidence to establish probable cause and obtain

search warrants, the wiretap in this instance was not expressly terminated based upon attainment

of objectives, but rather was terminated due to expiration of the 30-day interception

authorization.  See United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995).

**Minimization.**  Prior to commencing telephone interceptions in this investigation,

the monitors and supervising agents attended a "minimization" meeting, and instructions

regarding rules of minimization were explained by an Assistant United States Attorney.

Minimization procedures are intended to prevent unnecessary monitoring of innocent

conversations by requiring monitors to promptly determine the discussion's relevance to the

investigation, generally within the first two minutes of the call.  A minimization memorandum

was prepared by the Assistant U.S. Attorney and was made available for later reference by

monitors (Hearing Exh. No. 16).  Each monitoring agent was required to read the minimization

memorandum, as well as the wiretap application and affidavit, before participating, and each

monitor was required to sign an acknowledgment that the minimization memo was read.

Line sheets of target telephone activities were contemporaneously prepared and

records were maintained indicating the duration of each call and whether the call was pertinent

and/or minimized.  During the monitoring period a total of 13,254 calls were intercepted on the

target phone.  11,230 interceptions were completed calls and text messages.  995 of those calls

were considered pertinent to the investigation and 83 calls were minimized.  There was a total of

102 calls over two minutes, including 51 pertinent calls over two minutes and not minimized,

and 47 nonpertinent calls over two minutes and minimized.  At least 4 nonpertinent calls should

have been minimized but were not.  There were 25 calls designated privileged.  There was a total

of 8,219 text messages, 595 of which were deemed pertinent.  Monitors were permitted to

expand the two minute guideline limitation if known subjects of the investigation were

conversing, and agents were allowed to make periodic spot-checks of minimized phone calls to

evaluate whether the conversation may have become pertinent (Hearing Exh. No. 16).

     **Necessity.**  The affidavit of FBI Special Agent Andrew Mento (Hearing Exh. No.

12) described various conventional investigative techniques which were used in the investigation

prior to submitting the application for wiretap authorization.  Investigation methods and

information sources that were exploited in the investigation included review of physical

evidence, pen register data, review of telephone toll records, analysis of grand jury subpoena

materials, informant interviews, and discussions with other officers.  In addition, available

investigation information included evidence obtained by physical surveillance, confidential

informant reports, controlled drug buys, and consensual phone recordings.  Conventional

investigative tools and sources such as controlled drug purchases and confidential informant

reports had produced significant evidence, particularly with respect to defendant Vong Voraveth,

but generally, customary evidence gathering methods had not proven to be entirely successful

with respect to providing information on drug sources and the full scope of the larger conspiracy

network that was believed to exist based upon informant reports, or such methods were deemed too dangerous or not reasonably likely to succeed.  Specifically, undercover operations were not employed because the suspected target group was very tight knit, consisting entirely or primarily of Laotians, and would therefore be difficult to infiltrate.[5]  With respect to other investigation techniques and practices, prior physical surveillance had been conducted with little or no success due to Mr. Voraveth being extremely surveillance conscious, as indicated by his consistent use of counter-surveillance measures, including making abrupt changes in meeting locations, and utilizing look-outs and follow vehicles.[6]  Search warrants were not requested because officers did not know where drugs were being stored at any particular time.  Pen registers were used with some success, but would not reveal the content of conversations.  Trash searches were not conducted because Mr. Voraveth, in particular, lived in multi-residential housing having communal garbage disposal.  Consensual phone recording had been successful with regard to Mr. Voraveth, but the recordings were one-sided and did not allow identification of drug sources.

Phone calls that were intercepted in the wiretap surveillance were tape recorded and preserved for evidentiary purposes.  United States District Court Judge Michael J. Davis granted the government's sealing application by Order dated October 25, 2007 (Hearing Exh.

---

[5]  The only likely candidate for undercover work known to Special Agent Mento was a local Laotian police officer whom investigation target Vong Voraveth knew to be a police officer.

[6]  It was believed that an officer conducting surveillance had been observed at a McDonald's restaurant during the course of an undercover transaction, thereby causing Mr. Voraveth to change the location of the transaction, and creating concern by officers that informants could be placed in danger by further physical surveillance.

No. 15), and thereby ordered that the recordings be protected from alteration and sealed for a

period of ten years or until further court order.  The Sealing Order restricts disclosure of tape

contents though further disclosure to other law enforcement agencies is permitted for

investigative purposes authorized pursuant to 18 U.S.C. §2517.

Based upon the foregoing **Findings**, the Magistrate Judge makes the following:

**CONCLUSIONS**

<u>**Search and Seizure**</u>

**October 11, 2007, Search Warrants.**  Evidence seized pursuant to separate

warrants issued on October 11, 2007, authorizing searches of a particularly identified residence

and garage in Burnsville, Minnesota, as well as the person of Pradith Syhaphom (Hearing Exh.

No. 1), and a particularly identified residence and garage in Richfield, Minnesota, as well as the

person of Pradith Syhaphom (Hearing Exh. No. 2), was not unlawfully obtained in violation of

the constitutional rights of defendant Pradith Syhaphom or any other defendant in this matter.

The Burnsville residence search warrant was based upon sufficient probable cause as stated in

the Affidavit of Hennepin County Sheriff's Deputy Christofer Nybeck, and as determined by

Dakota County District Court Judge Shawn M. Moynihan.  The Richfield residence search

warrant was based upon sufficient probable cause as stated in Affidavit of Edina Police

Department Detective Richard Campbell and as determined by Hennepin County District Court

Judge John Q. McShane.  Each of the warrants properly and sufficiently identified the location

of the respective search and the items to be seized.  The October 11, 2007, search warrants were

lawfully issued and there is no requirement for suppression of evidence seized pursuant to the

warrants.

**Vehicle Search.**   Evidence obtained as the result of the search of a black Infinity QX 4 driven by defendant Pradith Syhaphom on October 11, 2007, was lawfully seized pursuant to search incident to Mr. Syhaphom's lawful arrest, and suppression of such evidence is not required. The defendant was lawfully arrested based upon his involvement in a controlled drug transaction observed by officers on October 10, 2007.  United States v. Poggemiller, 375 F.3d 686, 687-88 (8th Cir. 2004)(citing Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 2129 (2004)).  In addition, the nylon bag in which drugs were found was lawfully searched incident to the arrest.  Poggemiller, 375 F.3d at 688 (citing New York v. Belton, 453 U.S. 454, 460-461, 101 S.Ct. 2860 (1981)).

**October 12, 2007, Financial Account Warrants.**   Evidence seized pursuant to separate warrants issued on October 12, 2007, authorizing searches of a particularly described and numbered Wells Fargo bank account and safe deposit box (Hearing Exh. No. 3), and a particularly described and numbered credit union account and safe deposit box (Hearing Exh. No. 4), was not unlawfully obtained in violation of the constitutional rights of defendant Pradith Syhaphom or any other defendant in this matter.  Both the Wells Fargo and the credit union search warrants were based upon sufficient probable cause as stated in the identical Affidavits of Minnetonka Police Department Detective Tim Olson, and as determined by Hennepin County District Court Judge Francis J. Connolly.  Each of the warrants properly and sufficiently identified the location of the respective search and the object of the search and seizure.  The October 12, 2007, financial institution search warrants were lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrants.

**October 15, 2007, Warrant.**   Evidence seized pursuant to warrant issued on

October 15, 2007, authorizing the search of a particularly described and numbered federal credit union bank account and safe deposit box (Hearing Exh. No. 5) was not unlawfully obtained in violation of the constitutional rights of defendant Pradith Syhaphom or any other defendant in this matter.  The search warrant was based upon sufficient probable cause as stated in the Affidavit of Hennepin County Sheriff's Deputy Allan McHugh, and as determined by Ramsey County District Court Judge Rosanne Nathanson.  The warrant properly and sufficiently identified the location to be searched and the object of the search and seizure.  The October 15, 2007, financial institution search warrant was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrant.

**Federal Search Warrants.**  Evidence seized pursuant to separate warrants issued on December 18, 2007, authorizing the search of a  particularly described residence and garage in Minnetonka, Minnesota, identified in the warrant application as the residence of defendant Vong Voraveth (Hearing Exh. No. 8), and a particularly described residence and garage in Savage, Minnesota, identified in the warrant application as the residence of defendant Ta Lovan (Hearing Exh. No. 9), was not unlawfully obtained in violation of the constitutional rights of defendants Vong Voraveth, Ta Lovan, or any other defendant in this matter.  Evidence seized pursuant to a third warrant issued on December 18, 2007, authorizing the search of a particularly described residence and garage in Eagan, Minnesota, identified in the warrant application as the residence of defendant Minh Tran (Hearing Exh. No. 7), was obtained pursuant to a warrant that was not based upon sufficient probable cause to support its issuance and the evidence should be suppressed.

The December 18, 2007, federal warrants were all based upon probable cause

statements contained in the Affidavit of FBI Special Agent Daniel T. Otterson (Hearing Exh. No. 10), and presented to United States Magistrate Judge Janie S. Mayeron.  Each of the warrants properly and sufficiently identified the location of the respective search and the items to be seized.  However, while the affidavit of Special Agent Otterson does put forth sufficient evidence to establish probable cause to believe that the evidence to be seized would be found at the Minnetonka residence of defendant Vong Voraveth and the Savage residence of defendant Ta Lovan, the warrant application and affidavit does not adequately assert a nexus between drug related activity and the Eagan residence of defendant Minh Tran as needed to support issuance of a warrant to search that location.  In regard to the Tran residence search warrant the affidavit merely states that Tran's vehicle, a 2004 white Lexus, had been observed "departing from and returning to" the Eagan location on October 29, 2007.  This information was provided in the context of an alleged drug transaction involving the vehicle which had taken place more than a month prior to seeing the vehicle at the residence.  The affidavit contains no evidence to suggest that drug related activity was occurring in connection with either the Lexus or the residence at or near the time the vehicle was observed at the Eagan location.  Moreover, the inclusion of the October 29, 2007, surveillance evidence, though not a misrepresentation, appears to have been included for the sole purpose of establishing a nexus which was otherwise not alleged.  Under these circumstances the court cannot conclude that the warrant was executed in good faith.  United States v. Leon, 468 U.S. 897, 922-923, 104 S.Ct. 3405 (1984)(it is a requirement of good faith that an officer's reliance on the judicial officer's probable cause determination and on the technical sufficiency of the warrant be objectively reasonable).  The October 18, 2007, federal warrants to search the Minnetonka location and the Savage location were lawfully issued and

there is no requirement for suppression of evidence seized pursuant to those warrants.  The

October 18, 2007, federal warrant to search the Eagan residence of Minh Tran was not lawfully

executed and evidence seized pursuant to the Eagan warrant should be suppressed.

**Computer Search Warrant.**  Evidence seized pursuant to warrant issued on

March 31, 2008, authorizing the search of three computers particularly described as a Dell

Inspiron 600 laptop computer, a Hewlett Packard laptop computer, and an IPAQ Compaq pocket

PC. (Hearing Exh. No. 6) was not unlawfully obtained in violation of the constitutional rights of

defendant Pradith Syhaphom or any other defendant in this matter.  The search warrant was

based upon sufficient probable cause as stated in the Affidavit of FBI Special Agent Andrew J.

Mento, Jr., and as determined by United States Magistrate Judge Janie S. Mayeron.  The warrant

properly and sufficiently identified the items to be searched and the object of the search and

seizure.  The March 31, 2008, warrant to search computers was lawfully issued and there is no

requirement for suppression of evidence seized pursuant to the warrant.

<u>**Naovalath Statements**</u>

Defendant Xiro Naovalath's custodial interview statements to FBI Special Agent

Mento and other officers on October 5, 2007, were made knowingly, intelligently, and

voluntarily, and suppression of the statements is not required.  Defendant was properly advised

of his rights as an accused person, and he expressly acknowledged his understanding of these

rights in writing.  Mr. Naovalath was not under the influence of drugs or alcohol, and there was

no request for the assistance of an attorney or request that questioning cease.  Though defendant

was in custody, he was not subjected to coercion and his statements were not the fruit of an

unlawful arrest.  <u>United States v. Robinson</u>, 20 F.3d 320, 322-23 (8th Cir. 1994).  There is no

constitutional basis for suppression of defendant Xiro Naovalath's interview statements.

**Wiretap Procedures**

Defendants have not made the required showing that the application for electronic surveillance and the supporting affidavit in this case were substantively deficient or that the wiretap surveillance as conducted in this instance did not satisfy the procedural requirements set forth at 18 U.S.C. 2518.  Evidence obtained either directly or derivatively through interception of wire or oral communications should not be suppressed.

An application to engage in electronic surveillance must be reviewed in a practical and common sense fashion and broad discretion must be accorded to the decision to authorize a wiretap.  United States v. Garcia, 785 F.2d 214, 221 (8th Cir. 1986).  The information in the supporting affidavit must present a truthful showing of probable cause. United States v. Falls, 34 F.3d 674, 681 (8th Cir. 1994)(citing Franks v. Delaware, 438 U.S. 154, 164-65, 98 S.Ct. 2674, 2680-81 (1978)).  A defendant has the burden of showing that wiretap authority was unlawfully obtained or used.  Garcia, 785 F.2d at 222.  An application may be challenged through a showing that facts included in the affidavit are false or were made with reckless disregard for the truth, or that facts were omitted with intent to mislead or in reckless disregard to whether the affidavit is misleading.  Falls, 34 F.3d at 681.  Defendants have not shown that the wiretap applications and affidavits in this matter contain any untruthful probable cause information or that material was otherwise presented or omitted with the intent or the effect of misleading the issuing judge.

**Necessity.**  In addition to providing a complete statement of facts and circumstances relating to the alleged offense, the persons involved, and the type of

communications sought to be intercepted, 18 U.S.C. § 2518(1)(b), a wiretap application must contain information which will justify a determination that conventional investigative techniques have been tried and have either failed or reasonably appear to be unlikely to succeed or are too dangerous.  18 U.S.C. § 2518(1)(c) and (3)(c).  United States v. Shaw, 94 F.3d 438, 441 (8th Cir. 1995).  This "necessity" requirement is imposed to ensure that wiretaps are not routinely employed at the initial step in the investigation and does not dictate that all possible investigative techniques be attempted before seeking wiretap authorization.  Id. at 441 (citing United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990)).

Defendants in this action contend that the wiretap was improperly requested and ordered because the application and affidavit failed to satisfy the necessity requirement where the affidavit does not establish that alternative and less intrusive investigative methods would not be effective or were too dangerous to employ.  Specifically, it is asserted that the government's presumed inability to take advantage of investigative tools such as search warrants, trash searches, and pen registers was not factually supported, and the necessity contention should therefore be rejected.  The defense also argues that the apparent successes in gathering incriminating evidence through informant reports, controlled drug buys, and pen registers, particularly with respect to defendant Voraveth, is indicative of the continuing usefulness of those methods, and such successes further support the position that electronic surveillance was not necessary to the investigation in this instance.[7]   The government, on the other hand,

---

[7]  The contention that certain investigative techniques were successfully used prior to wiretapping runs parallel to a sometimes asserted claim that wiretap authority was unlawfully requested and granted because the ultimate goal of the investigation, i.e. gathering evidence sufficient to obtain an indictment and conviction, had already been attained.  Understandably, the defendants in this action have not directly presented an attainment argument.  Nonetheless, the

contends that the necessity requirement is met because a variety of traditional investigative techniques were used prior to applying for the wiretap, but that those procedures, though successful to a degree, were not adequate to reveal the full scope of the conspiracy or produce evidence sufficient to obtain convictions.  United States v. Thompson, 210 F.3d 855, 859 (8th Cir. 2000).

The affidavit of FBI Special Agent Mento in support of wiretap applications provides a thorough description of other investigative sources and methods that had already been used or considered, including confidential informants, undercover officer operations, multiple controlled drug buys, trap and trace devices and pen registers, physical surveillance, trash searches, search warrants, and grand jury subpoenas.  The affidavit describes the successes, limitations, and dangers of the various techniques under the circumstances of this case. Importantly, the pre-wiretap investigation is discussed with consideration for the broader goals of the investigation, i.e. revealing drug sources and the full scope of any conspiracy, whereas the defense argument focuses primarily on the investigation and sufficiency of evidence relating to defendant Voraveth.[8]

The wiretap was not the initial step in the investigation in this case and the application and authorization are not in conflict with the "necessity" requirement either because

_____

success of previous investigation techniques is an important consideration in the necessity analysis.

[8]  Though all remaining defendants have moved to suppress wiretap evidence, defendant Pradith Syhaphom did not address the necessity issue in post-hearing memorandum and defendants Minh Tran, Xiro Naovalath, and Ta Lovan merely joined in the post-hearing written argument on necessity submitted by defendant Vong Voraveth, who understandably focuses on the investigation and evidence relating directly to himself.

sufficient evidence had already been gathered as needed to achieve the broader goals of the

investigation or because those goals could have been attained through use of other investigative

methods and sources.  United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995).  The

application requested wiretap authorization until communications interceptions "reveal the

manner in which the named violators and others unknown participate in the specified offenses

and reveal the identities of his co-conspirators, places of operation, and nature of the

conspiracy."  Where the goals of an investigation are to learn the extent of the conspiracy and the

identity of co-conspirators, a wiretap may lawfully continue until the government accomplishes

those goals or the 30-day period of authorization expires.  United States v. Brown, 941 F.2d 656,

659 (8th Cir. 1991).  There is no argument and no factual showing that the government had

uncovered the source of the drugs at issue in this case, had determined the identity of all co-

conspirators, and had fully discovered the nature of the conspiracy prior to expiration of the 30-

day wiretap authority in this case.  The goals of the electronic surveillance were not attained and

the wiretap did not violate the necessity requirement on that account.  With respect to

defendant's more direct argument that the warrant affidavit did not put forth sufficient facts to

establish that alternative investigatory practices were too dangerous or were unlikely to be

effective, the court finds defendants' assertions to be unpersuasive.  Rather, the court finds the

testimony of FBI Special Agent Andrew Mento with respect to alternative investigation

techniques and the necessity for wiretap authorization to be credible, and further concludes that

the agent's affidavit in support of the application accurately describes the limitations of certain

conventional investigation techniques and sufficiently establishes the necessity of electronic

surveillance to achieve the goals of the investigation.  In particular, the court determines that

confidential informants had provided useful information, but that legitimate fear of retaliation limits the extent to which informants are willing to participate and that, in any event, informant access would not be sufficiently encompassing to reveal the full scope of a conspiracy. The court also finds no reason to discount the affiant's contentions that no appropriate candidate for undercover operations was immediately available[9] and that such a course of investigation would inherently limit its scope to one or two targets. The overall effectiveness of physical surveillance was significantly limited by use of counter-surveillance measures by targets, officer's inability to overhear conversations or observe concealed actions, and the potential for placing informant safety at risk. Similarly, pen registers do not reveal the content of conversations, and searches of Vong Voraveth's multi-dwelling trash receptacle would likely be futile endeavors to the extent that such trash searches would produce evidence that could clearly be directly associated with an investigation target. In addition, the court finds that the affidavit sufficiently established that pre-wiretap search warrants were not an available investigative tool because agents would not likely be able to allege a nexus between controlled substances and the locations at which they are kept; further consensual recordings by informants would not reveal drug sources or the scope of a conspiracy; and grand jury subpoenas would only serve to alert conspirators to the investigation and thereby compromise the investigation in a multitude of ways, including destruction of evidence, flight to avoid prosecution, and danger to informants. The government met its statutory obligation with respect to a statement of necessity and there is no showing that the relevant affidavit statements were inaccurate or misleading.

**Minimization.**   18 U.S.C. § 2518(5) requires the government to conduct

---

[9] <u>Supra</u> note 5.

electronic surveillance in a manner that will minimize the interception of communications that are not otherwise subject to interception.  Whether minimization efforts were properly conducted is a test of objective reasonableness under the facts and circumstances of the case.  United States v. Padilla-Pena, 129 F.3d 457, 462 (8th Cir. 1997)(citing Scott v. United States, 436 U.S. 128, 137-38, 98 S.Ct. 1717, 1723-24 (1978)).  Occasional interception of nonpertinent communications is not forbidden by 18 U.S.C. § 2518(5) and does not warrant suppression unless particular circumstances of the case otherwise justify this severe sanction.  Padilla-Pena, 129 F.3d at 464.  In a case involving a wide-ranging conspiracy with many participants, even an experienced monitor might experience difficulties in determining the relevancy of uncompleted calls.  This is true whether calls are evaluated contemporaneously or after-the-fact.  Id. at 464 (citing Scott, 98 S.Ct. at 1725-26).

Each of the monitors assigned to the surveillance in this case was instructed on the rules of minimization by an Assistant United States Attorney.  A minimization memorandum was prepared and was available for reference purposes.  Monitors were instructed to maintain logs registering the time and duration of each call.  They were further instructed to terminate calls immediately upon determination that the conversation was privileged or not pertinent to the investigation and that a pertinence determination must be made within the first two minutes of the call.  Monitors were to refrain from listening in on minimized calls but were permitted to conduct periodic spot checks to re-evaluate the nature and course of extended conversations.

Defendants have not put forth evidence of any specific calls to which a failure to minimize claim might apply.  To the contrary, on the record presently before the court, suppression of wiretap evidence based upon failure to minimize is not justified.  Over 13,000

interceptions were documented and over 11,000 calls and texts were completed.  Only 102 calls were over two minutes in duration and therefore subject to minimization under the two-minute maximum rule.  51 of those extended calls were deemed pertinent and not subject to the minimization requirement.  47 of the remaining 51 non-pertinent calls were minimized, leaving an acknowledged 4 improperly non-minimized calls.  The government appropriately instructed monitors to minimize surveillance on innocent conversations as mandated by both 18 U.S.C. § 2518(5) and the Order authorizing interception issued by Chief Judge Rosenbaum.  Minimization, by definition, is not an exact endeavor.  There is no evidence whatsoever that the government abused its authority by failing to properly minimize or that measures taken to protect persons from improper electronic surveillance were not otherwise objectively reasonable.  With respect to the possibility that evidence may later surface which relates to the objective reasonableness of minimization, the assertion of failure to minimize is speculative and the motion is premature.

## **Motion to Return Vehicle**

The white Lexus SUV owned by defendant Minh Tran and his wife Hang Thu Nguyen, and seized in the execution of a search warrant at Tran's residence, is the subject of an administrative forfeiture proceeding, and return of the property may not be compelled as relief on motion to return property under Fed. R. Crim. P. 41(g).   The Lexus SUV is currently in the possession of the FBI and administrative forfeiture proceedings were initiated on or about February 1, 2008.  Notice of the forfeiture proceedings were timely sent via certified mail to both Minh Tran and Hang Thu Nguyen, Tran's wife.  On Feb. 21, 2008, Mrs. Nguyen filed a claim with the FBI contesting the administrative forfeiture.  However, Minh Train did not file a claim

protesting the forfeiture.  Minh Tran is now seeking return of the vehicle pursuant to a Rule

41(g) motion for return of unlawfully seized property.

The general rules of equitable jurisdiction hold that relief in equity is unavailable

where an adequate legal remedy exists.   The defendant in this matter is moving pursuant to Rule

41(g) for equitable remedy as his relief for an allegedly improper seizure, though an adequate

remedy at law exists in the context of forfeiture proceedings.  Rule 41 is "'a crystallization of a

principle of equity jurisdiction.'"  United States v. Rapp, 539 F.2d 1156, 1160 (8th Cir.

1976)(quoting Smith v. Katzenback, 351 F.2d 810, 814 (D.C. Cir. 1965)).  If an adequate remedy

exists at law then no basis exists for a court to use its equitable jurisdiction to attack a forfeiture

as "41(e)[g] motions may not be used to attack antecedent civil forfeitures."  Muhammed v.

D.E.A., 92 F.3d 648, 652 n.4 (8th Cir. 1996), see also  United States v. Lange, 2007 WL

2361437 (D. Minn., August 15, 2007).  The remedy at law in this instance is provided at 18

U.S.C. § 983(a)(2)(A)-(a)(3)(A) (2006).  An individual whose property is going to be forfeited

must be notified of a pending administrative forfeiture and given opportunity to object to it.

Once this objection is made, the government has 90 days to either move the proceeding to a

judicial forfeiture hearing or return the property in question.  Id.   The court finds no significance

to the ownership interest of Mr. Tran's wife in the context of a Rule 41(g) motion, and indeed, it

seems that her interest might be more appropriately addressed in forfeiture proceedings.

Based upon the foregoing Findings and Conclusions, the magistrate judge makes

the following:

## RECOMMENDATION

It is hereby recommended that:

1.   Defendant Vong Voraveth's Motion to Suppress Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 75];

2.   Defendant Vong Voraveth's Motion to Suppress Wiretaps be **denied** [Docket No. 77];

3.   Defendant Pradith Syhaphom's Motion to Suppress Evidence Obtained through Electronic Surveillance be **denied** [Docket No. 136];

4.   Defendant Pradith Syhaphom's Motion to Suppress Evidence Seized pursuant to Search be **denied** [Docket No. 138];

5.   Defendant Minh Tran's Motion to Suppress Evidence Search and Seizure and Return Property be **granted in part and denied in part** [Docket No. 92].  Defendant Tran's motion to suppress evidence is **granted** and his motion for return of property is **denied**.

6.   Defendant Minh Tran's Motion to Suppress Evidence of Electronic Surveillance in the Form of Wiretaps be **denied** [Docket No. 93];

7.   Defendant Xiro Naovalath's Motion to Suppress Statements be **denied** [Docket No. 115];

8.   Defendant Xiro Naovalath's Motion to Suppress Evidence of Electronic Surveillance in the Form of Wiretaps be **denied** [Docket No. 119];

9.   Defendant Ta Lovan's Motion to Suppress Search and Seizure of Evidence Obtained at Lovan Residence, Savage, Minnesota be **denied** [Docket No. 129]; and

10.  Defendant Ta Lovan's Motion to Suppress Evidence of Electronic Surveillance be **denied** [Docket No. 131].

Dated:   July 1, 2008

　s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge


        Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the district court and it is therefore not directly appealable to the circuit court of appeals.  Written objections must be filed with the Court before July 16, 2008.

        Unless the parties stipulate that the district court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.